## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MARGARET DEAN,

                                     Case No. 1:14-cv-310
                                      Barrett, J.
                Plaintiff,                   Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Margaret Dean filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.   *See* 42 U.S.C. §405(g).   Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review.   The Commissioner filed a response, to which Plaintiff filed a reply.   For the reasons explained below, the ALJ's decision should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Background

In November 2010, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging a disability onset date of August 30, 2010 due to chronic pancreatitis, kidney stints, diabetes, major depression, anxiety, heart burn, and high cholesterol.   Her application was denied initially and upon reconsideration, following which Plaintiff sought an evidentiary hearing.   A hearing was held in Dayton, Ohio before Administrative Law Judge ("ALJ") Amelia Lombardo on September 20, 2012, at which Plaintiff appeared with counsel and presented testimony.   (Tr. 38-66).   A vocational

expert also testified. On November 28, 2012, ALJ Lombardo filed a written decision in which she determined that, despite severe psychological impairments, Plaintiff remained capable of full-time employment and therefore was not disabled. (Tr. 19-28). The Appeals Council denied further review, leaving the ALJ's decision as the Commissioner's last decision.

Born in 1952, Plaintiff was three days shy of her 60th birthday and in the "advanced age" category at the time of the ALJ's decision. She has a G.E.D. and worked for 21 years for the Miller Brewing Company, with past relevant work as a stockroom clerk (medium as performed) and forklift driver. Plaintiff testified that she went on disability with Miller Brewing Company because she was afraid of being fired based on the serious errors she was making, due to her inability to concentrate and focus. (Tr. 48). The ALJ agreed that Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date, and that she had severe impairments of depression and anxiety. (Tr. 21). However, she found that those impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, a determination that Plaintiff does not challenge here. (Tr. 22). Instead, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") for a full range of unskilled work at all exertional levels, with only the following nonexertional limitations:

> Only low stress work (no assembly line production quotas and work that is not fast paced); no contact with the general public; occasional contact with coworkers and supervisors.

(Tr. 24).

Based upon testimony from the vocational expert, the ALJ found that Plaintiff could perform a number of representative jobs, including hospital cleaner, industrial sweeper/cleaner, and laundry worker. (Tr. 27-28). Those positions exist in significant

numbers in the national economy, as well as in southwestern Ohio.  Therefore, the ALJ found that Plaintiff was not under a disability between August 30, 2010 and the date of her decision. (*Id.*).   The Appeals Council denied Plaintiff's request for further review, and she timely filed this judicial appeal.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  In other words, this Court must affirm even if the Court itself might have reached a different conclusion in reviewing the same evidence.  As the Sixth Circuit has explained:

3

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.  A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. §404.1512(a).

## B.  Alleged Errors In Weighing Medical Evidence

### 1.  Standards Applicable to Medical Opinion Evidence

The sole error alleged by Plaintiff is that the ALJ inappropriately weighed the medical evidence by failing to give controlling weight to two treating physicians, and instead erroneously relying upon the opinions of non-examining state agency consultants who had limited access to Plaintiff's records.  Plaintiff's treating urologist,

Dr. Gaker, and her treating psychiatrist, Dr. Onady, both completed RFC forms that would have supported greater physical and mental restrictions than those determined by the ALJ.  Based upon Plaintiff's advanced age, limiting her to either light or sedentary unskilled work would have entitled her to a presumption of disability under applicable Grid Rule 201.06 or 202.06.  However, the ALJ rejected the opinions of both treating physicians.

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).  Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."  *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

In addition to the guidelines applicable to the evaluation of the opinions of treating physicians, the regulatory framework provides guidelines for the evaluation of the opinions of consulting physicians.  In general, the opinions of a consulting physician

or psychologist who has actually examined the plaintiff will be given more weight than that of a non-examining consultant, although only treating physicians are entitled to controlling weight. *See* 20 C.F.R. §404.1527(c)(1) and (c)(2).

Viewed under the referenced legal framework, the ALJ's rejection of the opinions of Plaintiff's two treating physicians, and reliance on non-examining consultants to formulate Plaintiff's RFC, invites close scrutiny. Nevertheless, the regulatory presumptions remain subject to individual variations. Thus, in *Blakley* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances," the opinions of non-examining consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). While an ALJ may not rejected a treating physician opinion solely based on the conflicting opinions of non-examining consultants, *see Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), no reversible error occurs when an ALJ determines that a treating physician opinion is not entitled to controlling weight because it is not well-supported, is internally inconsistent, and/or is inconsistent with the record as a whole.

In this case, I find no reversible error. The ALJ rejected the treating physician opinions for "good reasons," and appropriately supported her analysis and conclusions with reference to substantial evidence in the record as a whole.

### 2. Opinions Relating to Physical Limitations

At Step 2 of the sequential analysis, the ALJ determined that – contrary to allegations that Plaintiff was disabled due to a combination of physical and mental limitations - Plaintiff does not have *any* "severe" physical impairments that cause "more than a minimal effect on the claimant's …ability to work." (Tr. 21). Despite Plaintiff's

history of diabetes and pancreatitis, the ALJ found no "severe" impairment from either condition.  Plaintiff's treatment for pancreatitis "consists of stent replacements once per year," and the notes of her treating urologist, Dr. Douglas Gaker, reflect "that she is doing well except for some occasional stress incontinence."  (Tr. 22).    The record shows that Plaintiff has treated with Dr. Gaker since November 11, 2004.  Plaintiff has been treated for chronic pancreatitis since 2000, and testified she has taken insulin for her diabetes for ten years.  (Tr. 44).  However, Plaintiff continued to work full-time despite the existence of diabetes, pancreatitis and other chronic conditions, and she does not allege disability until August 2010.  The ALJ noted that two non-examining consultants also opined that Plaintiff had "no severe physical impairments." (Tr. 21). The ALJ gave "significant weight" to those nonexamining consultants on the issue of whether Plaintiff had any "severe" physical impairments at Step 2.

It is not entirely clear whether Plaintiff directly challenges the ALJ's Step 2 determination regarding whether her physical impairments were "severe" versus "non-severe."  Plaintiff does not specify precisely which of her physical conditions (diabetes, pancreatitis, kidney stints, heartburn, or high cholesterol) she believes should have been found to be "severe" at Step 2.  In any event, any possible error at Step 2 does not provide grounds for remand in this case, because the ALJ proceeded through the subsequent stages of the sequential analysis.  *See Mariarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Pompa v. Com'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003).

Plaintiff more directly challenges the ALJ's rejection of Dr. Gaker's RFC opinions. Plaintiff testified that Dr. Gaker, a urologist, does not treat her for diabetes or pancreatitis, but instead for kidney stones.  (Tr. 45).  The records reflect that Dr. Gaker

treats Plaintiff with kidney stent replacements.  Approximately a year after her alleged disability onset date on August 4, 2011, Dr. Gaker completed a Medical Assessment of Ability to do Work-Related Activities form.  He opined that Plaintiff's ability to carry and lift was affected by her stress incontinence, and limited her to "occasionally" lifting/carrying up to 20 pounds, with "frequent" lifting/carrying only up to 10 pounds, due to her stress incontinence and/or hydronephrosis.  He further opined that she would have postural limitations including standing for two hours a day (uninterrupted for one to two hours), sitting for 3-6 hours (uninterrupted for two hours). (Tr. 473).  He stated that she could only "occasionally" climb, kneel, or crawl, could never stoop or crouch, and was restricted from reaching and pushing/pulling because of incontinence, hydronephrosis, and severe back pain.[1]  He opined that she would be unable to be consistent and reliable due to frequent doctor's visits, and could not perform even light work activity.  Shortly after Dr. Gaker completed that RFC form, on September 27, 2011, Plaintiff underwent a double J stent replacement – a procedure that the record reflects she underwent routinely on an annual basis as treatment for her stress incontinence and/or hydronephrosis.

Based upon Dr. Gaker's status as a treating urologist for many years, and citing his "longitudinal treatment," and specialized training, Plaintiff argues that (irrespective of whether any physical impairment was classified as "severe") Dr. Gaker's opinions of Plaintiff's physical limitations should have been accepted as controlling. However, the determination of an individual's residual functional capacity, like the ultimate determination of disability, is reserved to the Commissioner. 20 C.F.R. §404.1527(d)(2)("the final responsibility for deciding these issues [e.g., residual

---

[1]Plaintiff does not allege disability due to back pain in this proceeding.

functional capacity] is reserved to the Commissioner"). Here, the ALJ rejected Dr. Gaker's August 4, 2011 opinions because he had not seen the Plaintiff in nearly 10 months, "since October 22 of 2010," and:

> Treatment notes on that date indicate she was doing well. He sees the claimant approximately once per year and all clinical examinations have been normal. While there are occasional mentions of complaints of stress incontinence, this condition appears to have improved quickly. The claimant reports few symptoms from her pancreatitis to her primary care doctor and indicates these are mild and relieved by analgesics. His opinion is unsupported by other evidence in the case, including his own treatment records and is given no controlling and no significant weight.

(Tr. 26, see also Tr. 617). In other words, the ALJ concluded that Dr. Gaker's opinions were not entitled to the "controlling weight" presumption usually given to the opinions of treating physicians, because his opinions were not "well supported" and because the opinions concerning significant limitations were inconsistent with both his own records, and with Plaintiff's medical records as a whole.

Finding no basis to include physical limitations in Plaintiff's RFC, the ALJ explained that, despite her history of chronic diabetes and pancreatitis, her treatment consisted only of once-per-year kidney stent replacements and Dr. Gaker's own notes reflected only "some occasional stress incontinence" and otherwise "normal findings at all of her examinations." (Tr. 22, emphasis added). At a September 15, 2011 visit soon after Dr. Gaker reported that Plaintiff had serious physical limitations, Plaintiff denied any physical complaints at all. (Tr. 22 citing Exhibits 2F, 12F). Likewise, at a June 2012 office visit with her primary care physician, Kevin Strait, M.D., she reported no diarrhea, nausea or vomiting, and described her abdominal pain as mild and relieved by analgesics. (Tr. 22, citing 20F at 1). Based upon the record presented, I conclude that substantial evidence supports the ALJ's rejection of Dr. Gaker's opinions concerning Plaintiff's physical limitations and corresponding determination that Plaintiff has no

physical restrictions that would impact her ability to work.

Plaintiff argues that the ALJ improperly "automatically" accepted the opinion of two non-examining consultants, one of whom practiced in family medicine, and the other of whom practices in hospital medicine. As Plaintiff points out, neither was a urologist like Dr. Gaker with specialized training in stress incontinence and/or stent replacement. Additionally, Plaintiff claims the two reviewers "reviewed only four medical exhibits." (Tr. 69, 82, 87, 95). Plaintiff argues that the ALJ's reliance on the two consultants was contrary to SSR 96-6p, which requires an ALJ to consider a multitude of specific factors in weighing medical opinion evidence, including the examining relationship, treatment relationship, supportability, consistency, specialization, and other factors. *See also generally*, 20 C.F.R. §404.1527(c). Plaintiff further contends that the ALJ's decision to credit the opinions of non-examining consultants over the opinions of Dr. Gaker violates *Gayheart v. Com'r v. Soc. Sec.*, 710 F3d 365, 377 (6th Cir. 2013)(holding that it is error to reject a treating physician's opinion based solely upon the conflicting opinions of nontreating and nonexamining doctors).

The undersigned does not agree. The ALJ did not reject Dr. Gaker's opinion solely or even primarily because it was inconsistent with the opinions of the two non-examining consultants, but instead because Dr. Gaker's opinions were unsupported and clearly inconsistent both with his own treatment notes and with the record as a whole. Plaintiff has failed to cite to any objective medical evidence or to clinical records of Dr. Gaker or Plaintiff's primary care physician[2] that would provide support for Dr. Gaker's multitude of relatively severe physical limitations based solely on the once-per-year stent replacement or occasional, mild, and quickly resolving "stress incontinence."

---

[2]The undersigned notes that Plaintiff's records reflect that Plaintiff more often reported pancreatic flare-ups to her mental health therapist, but even those references appear no more than occasionally, and obviously were not for the purpose of seeking treatment for that condition.

Although Dr. Gaker has specialized training as a urologist, he does not have any particular knowledge of the relevant social security guidelines and regulations, as did the non-examining agency consultants.

Significantly, and contrary to Plaintiff's assertion, the consultants did not review just "four records." Instead, the initial consulting reports reflect that they reviewed *all* medical evidence of record received as of January 2011 from multiple sources, meaning all records received from: (1) Atrium Medical Center; (2) Plaintiff herself (pain questionnaires and function reports); (3) Dr. Onady; (4) Comprehensive Counseling Center; (5) Dr. Walsh; and (6) unknown source (work history). At the time of the initial consulting reports, additional evidence had been requested from Drs. Gaker and Strait. (Tr. 69-70). By the time of the consultants' reconsideration in April 2011, additional records had been received including: (1) more function reports from Plaintiff; (2) Dr. Gaker's records; and (3) Dr. Strait's records. (Tr. 78-79).

It is noteworthy that the vast majority of the records cited by Plaintiff relating to her chronic physical condition stem from treatment beginning in 2004 through October 2009, prior to her disability onset date. (Doc. 6 at 3). Records beginning in September 2010 reflect mostly normal findings. A report of abdominal pain in September 2010 shortly after the alleged onset of disability date was attributed to stress relating to her sister's terminal disease, with the examining physician "strongly" encouraging Plaintiff *to* return to work. (Tr. 384). At a follow-up appointment on November 8, 2010 at which Plaintiff reported her abdominal pain to be less severe, the pain was similarly deemed to be somatic in nature, with no evidence of pancreatitis on CT scan. (Tr. 385-386). Because the ALJ's rejection of Dr. Gaker's opinions is so strongly supported by the record in this case, I find no *Gayheart* violation. In addition, and contrary to Plaintiff's

11

assertion, an ALJ is required to consider but is not required to spell out in detail the analysis of each factor listed under 20 C.F.R. §404.1527. Thus, the ALJ's failure to articulate each factor she considered in giving weight to the non-examining consultants does not require remand.

Plaintiff additionally asserts error under *Blakley*, repeating her erroneous argument that the consulting physicians reviewed only four medical records, and lacked access to Plaintiff's complete records including Dr. Gaker's opinions. In *Blakley,* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). As stated, the consulting physicians did review Dr. Gaker's records in April 2011, as well as all other medical evidence of record as of that date.

Even though the consultants did not review post-April 2011 evidence, I find no *Blakley* error. While succinctly stated, the ALJ clearly explained: "There is nothing in the record to suggest that pancreatitis, diabetes, or occasional stress incontinence would result in more than minimal limitations on the claimant's functional abilities to work." (Tr. 22). In other words, the ALJ explained that she (the ALJ) had fully reviewed the *entire* record and found the two consulting opinions to be consistent with that record. Elsewhere in her opinion, the ALJ specifically referenced multiple records, including Dr. Gaker's own notes (most of which had been reviewed by the consultants), that supported her conclusion that Plaintiff has no work limitations resulting from any physical condition. *Accord McGrew v. Com'r*, 343 Fed. Appx. 26, 32 (6th Cir.

2009)(affirming where ALJ considered medical evidence after consultant's report).  To the extent that a reviewing court would disagree and find any *Blakley* error based upon the ALJ's failure to better articulate her recognition that the non-examining consultants did not review the post-April 2011 records, the undersigned finds any error to have been harmless or *de minimis*.  Last, the undersigned does not find persuasive Plaintiff's suggestion that the ALJ substituted her judgment and, in effect, played doctor, by referencing various medical records.  To the contrary, the undersigned concludes that the ALJ did not stray from her appropriate role as the final arbiter of Plaintiff's RFC.

### 3.  Opinions Relating to Mental Limitations

Plaintiff presents the same arguments concerning the ALJ's evaluation of her mental limitations: that the ALJ improperly rejected the opinions of her treating psychiatrist, Dr. Alice Onady, and instead adopted the opinions of two non-examining consultants who allegedly only reviewed "four records."

Plaintiff did not seek any mental health treatment until very shortly before she applied for disability benefits, beginning mental health treatment soon after her alleged disability onset date.  (Tr. 23).  She first underwent a diagnostic mental exam by a mental health therapist, Ms. Judy Frederick, on September 23, 2010.[3]  At that time, Ms. Frederick diagnosed recurrent major depression, alcohol dependence in full remission, and generalized anxiety disorder.  (Tr. 447).  Ms. Frederick assessed Plaintiff with a GAF score of 51, consistent with someone with moderate limitations.  (Tr. 24).  Plaintiff reported to Ms. Frederick that she had a developmentally disabled nephew living with her and had custody of two young grandsons.

Dr. Onady first evaluated Plaintiff shortly thereafter, on October 14, 2010.

---

[3]A master's level therapist or social worker is not considered to be a treating physician.

Plaintiff reported similarly to Dr. Onady that she was raising two grandchildren and caring for her mentally disabled nephew, and that her best friend, who had provided emotional support, had died two years previously. Consistent with Ms. Frederick's assessment, Dr. Onady diagnosed severe major depression, severe generalized anxiety disorder, panic disorder, and alcoholism in remission, for which Dr. Onady prescribed medications. (Tr. 409-412). Dr. Onady continued to see Plaintiff for medication management every three months.

Dr. Onady first completed a mental RFC form on June 23, 2011, opining that Plaintiff had "marked" limitations in social functioning, but no more than "moderate" limitations in activities of daily living or concentration, persistence or pace. (Tr. 26; *see also* Tr. 470-471). Dr. Onady noted that Plaintiff had suffered from a number of losses in her life, including job, money, death of family members and poor health, with little emotional support, which losses led to a "long hx of severe depression and a past hx of severe alcoholism...." (Tr. 463). Dr. Onady further stated: "Due to her difficult childhood & family hx of alcoholism she has poor coping skills & a genetic presdisposition for major depression which makes it difficult for her to deal [with] the severe pain of pancreatitis." (Tr. 464).

Dr. Onady stated that Plaintiff would be unable to maintain regular attendance, respond appropriately to supervision, co-workers, and customary work pressures, withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of worsening physical and mental impairments, or sustain attention and concentration to meet normal standards of work productivity and work accuracy. (Tr. 465-466). While Dr. Onady opined that Plaintiff could understand, remember, and carry out simple work instructions, she qualified her response by

14

suggesting that Plaintiff could not do so on a "long-term basis" for 8 hours per day.  (Tr. 466).  Similarly, Dr. Onady opined that Plaintiff could behave in an emotionally stable manner, could relate predictably in social situations, and could get along with co-workers or peers without unduly distracting them for "short periods of time," but expressed "doubt" as to whether Plaintiff "could sustain her stability under any type of work setting."  (Tr. 467, 469).  Dr. Onady concluded that Plaintiff would be unable to maintain concentration and attention for any extended periods of time, or perform other activities required in a normal work day.  (Tr. 468-470). Dr. Onady made clear that her opinions were based on a combination of Plaintiff's depression and her reported physical symptoms, including "frequent pancreatic flare-ups" and "severe" physical pain.  (Tr. 464-465).  The interrogatories signed by Dr. Onady were co-signed by Ms. Frederick.  (Tr. 471).

Thirteen months later on July 12, 2012, Dr. Onady completed a second set of interrogatories.  At that point, she diagnosed Plaintiff with severe, chornic major depression and generalized anxiety disorder.  (Tr. 653, 656).  She opined that Plaintiff had "marked" limitations in concentration, persistence or pace, but no more than "moderate limitations" in any other area.  (Tr. 26, 654).  Despite the differences from her 2011 opinions regarding which area Plaintiff suffered from a "marked" limitation, Dr. Onady's July 2012 report was consistent with the 2011 report in concluding that Plaintiff would miss work for three or more days per month, and would generally be unable to be prompt and regular in attendance or meet other standards required to maintain employment.  (Tr. 654-658).  Dr. Onady again referenced, as the primary basis for her opinions, the interaction of Plaintiff's pancreatic pain and her decreased "pain tolerance" resulting from depression.  (*Id.*).  Most of her opinions concerning Plaintiff's work

15

limitations were again based upon the combination of "depression & pancreatic flare-ups."  (Tr. 658-659).  Dr. Onady stated that Plaintiff demonstrates reliability "but may be unable to get to work if depressed or ill."  (Tr. 670).  Inconsistently, on the same date that Dr. Onady opined that Plaintiff had "marked" deficiencies in concentration, persistence or pace (Tr. 654).  She opined that Plaintiff had no more than moderate limitations in that area or any other functional area.  (Tr. 26, 673-674).

The ALJ noted that Plaintiff reported in January 2011 that she helps get her grandchildren up for school, watches TV, rests, tries to pay bills, shops, and goes to her doctors.  She monitors her husband's activities and cares for two grandchildren.  Plaintiff's developmentally handicapped nephew also lives with her.  She prepares her own meals, does some laundry and a little ironing, and is able to drive and use a computer, use a checkbook and money orders.  (Tr. 22-23).  She also helps her mom and sister. (Tr. 23).  Plaintiff reported to her mental health treating sources that her husband is childlike and does little, that she takes care of everyone but herself and feels overwhelmed by family issues.  (Tr. 24).  However, Plaintiff has been able to travel to Arizona and Kentucky, provided support to her sister by accompanying her to court, and helps care for her elderly parents, including with paperwork.  (Tr. 24-25).  "[G]iven all the above activities and family stressors, it appears reasonable to assume that she should be able to perform employment within the very limited mental parameters outlined above."  (*Id.*).

The ALJ rejected Dr. Onady's more debilitating RFC opinions for the following reasons:

> [H]er functional assessment does not support the low scores.  In June 2011, she stated that the claimant would have marked limitation in social functioning, but otherwise not more than moderate limitation in any other area.…  This is consistent with [an] assessment from July 2012.…

However, on a different report from the same day in July 2012, she opined that the claimant would not have more than moderate limitation in any functional area…. The low GAF scores are also inconsistent with other scores in the record (GAFs of 52 and 51 ….). These scores showing moderate symptoms are also more consistent with Dr. Onady's functional assessments. Furthermore, Dr. Onady reported that the claimant "is an enabler and tries very hard to care for everyone in her family"…. However, the issue is her ability to perform competitive employment and this would seem to support that ability. After considering the inconsistencies in the record, in addition to the claimant's activities of daily living, including considerable support for multiple family members, it is reasonable to conclude that Dr. Onady's opinion for disability is not well supported and will be given no controlling or deferential weight.

Dr. Onady's records mention the claimant's pancreatitis. However, although she considers alleged pain from pancreatitis in her assessments of the claimant, she does not treat the claimant for this condition, and as discussed above, the claimant's reports are inconsistent with the medical records, which show few flare-ups or problems reported to medical doctors….
        …..
[Plaintiff's] physical impairments are not severe and her mental impairments would not preclude all work activity. She has shown through her activities of daily living that she is capable of caring for multiple people while maintaining her home.…

(Tr. 26).

Dr. Onady submitted a third report to the Appeals Council. (Tr. 692). However, because that report was not considered by the ALJ and the Appeals Council determined that it was not "new and material," this Court may not consider the evidence for purposes of determining whether the ALJ's decision was supported by substantial evidence. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

On January 26, 2011, a non-examining psychologist, Dr. Carolin Lewin, reviewed Plaintiff's records (including Dr. Onady's and Plaintiff's therapist's records), and opined that Plaintiff had only "mild" restriction in her daily activities and concentration, persistence or pace, "moderate" restriction in her social functioning, and one or two episodes of decompensation. (Tr. 72). Dr. Lewin concluded that Plaintiff "would do

17

better with tasks that do not require much interaction with others, but [that] she can engage appropriately in simple social interactions. (Tr. 25).  Dr. Lewin further opined that Plaintiff "seemed quite able to handle most instructions and concentrate as needed in a routine setting without a lot of intensive relating…." (*Id.*).  Dr. John Waddell, a second non-examining psychologist, reviewed the same set of records as well as a few additional records on April 22, 2011, and affirmed Dr. Lewin's prior assessment.  (Tr. 82-84).  The ALJ gave some weight to the assessment of Dr. Waddell,[4] which she found to be supported by Plaintiff's activities of daily living and the record overall.  (Tr. 25).

Having reviewed the entirety of Dr. Onady's and Ms. Frederick's records, the undersigned finds substantial evidence to support the ALJ's rejection of Dr. Onady's opinions concerning Plaintiff's limitations, and adoption of the mental RFC findings as determined by the ALJ.   Although Plaintiff claims to provide only minimal assistance to family members, and testified that she only "used to" provide help for her parents "three, four years ago," (Tr. 49), mental health records reflect much more frequent assistance and caregiver involvement throughout the alleged disability period.  *See, e.g.*, 2010 records (Tr. 431, reports oldest grandson not doing well at school; Tr. 433, "enjoyed visiting her mom"; Tr. 429, driving to Dayton to pick up mom and stepdad Christmas morning, reports "less depression & anxiety").  *See also* 2011 records (Tr. 554, going to cousin's condo to feed cats, reporting she is "OK not working;" Tr. 547, reporting she helped clean out cousin's condo; Tr. 545, noting Plaintiff "has been made medical power-of-attorney" for terminally ill cousin and feeling overwhelmed with demands, discussed vacation as self-care; Tr. 541, "mired in elder care" of parents; Tr. 533 "care

---

[4]Despite stating that Dr. Waddell's opinions would be "given weight," the ALJ found greater overall limitations than assessed by the consultants, who determined that Plaintiff could still perform her past relevant work   (Contrast Tr. 27 with Tr. 84).

for elderly parents" requires her "to run to Dayton 3x per month," forgot to sign [grandsons] up for softball" but "keeps a close watch on the boys' Facebook pages"; Tr. 517-518, concern over leaving grandsons while traveling to Arizona, looking forward to visiting imprisoned brother; Tr. 519, "helped sis go to court yesterday;" Tr. 525, reporting care of husband and having to travel to Dayton "only once this week" for care of parents; Tr. 527 "[t]wo trips to Dayton so far this week but mom has resolved the plumbing leak…will go again tomorrow and maybe more so this week"; Tr. 513 "mom called clt to Dayton…clmt is absolutely overwhelmed with coping with dgter, mom and sister; completely unable to work with everything on her 'plate,'" concern over selling mom's home; Tr. 502 "ongoing issues with elderly parents; problem-solving is shown with clt finding someone to mow parents' two acres plus take care of snow removal; this helps clt because she and husband always had to do this in the past…Thanksgiving was OK but clt had many people to feed"). Plaintiff's most recent 2012 records similarly reflect her significant caregiving role for multiple family members. (*See e.g.,* Tr. 569, reporting helping bury a cousin, helping elderly parents and terminally ill sister; Tr. 584, trying to organize paperwork for parents; Tr. 489, "continues to help mother," Tr. 591 "continues to drive to Dayton to help her mother" and noting Plaintiff "has to return to work for two weeks in the summer to keep insurance;" Tr. 675 "Helps parents in Dayton. They are falling alot. [sic]"; Tr. 494 "had decent holidays…spent an overnight with her sister and they reminisced").

Plaintiff admits that she has been "raising two grandchildren and caring for a mentally disabled nephew." (Doc. 6 at 5. Tr. 409). She concedes that 2012 records report her condition as "improved" or "more stable." (Tr. 566, 568). In fact, on May 26, 2012, Plaintiff's therapist, Ms. Frederick, completed a "transfer/discharge summary"

19

report for the purpose of a "*decrease* [in] level of care," reflecting that Plaintiff had last been seen two months previously in March, and that less care was needed due to Plaintiff's improved progress. (Tr. 568-569, emphasis added, *see also* Tr. 570 "clt will watch for the return of suicidal ideation and if not in therapy, will immediately return to therapy."). In sum, substantial evidence supports the ALJ's determination that Dr. Onady's opinions were inconsistent with the referenced records and did not support more than the more "moderate" mental limitations determined by the ALJ.

### 4. Credibility

Plaintiff's disability claim rests upon complaints of physical and psychological impairment that are not well-supported by objective evidence. Subjective complaints of pain may support a claim for disability. *See Duncan v. Sec'y of HHS*, 801 F.2d 847, 852 (6th Cir. 1986). However, in cases in which complaints of disabling pain are not well-supported by medical evidence, the credibility of the claimant is often critical. *See Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990).

Here, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms.… the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the RFC determined by the ALJ. (Tr. 25). Plaintiff does not directly challenge the ALJ's negative assessment of her credibility, but nearly all of her arguments indirectly do so. An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

The ALJ expressed concerns about the Plaintiff's credibility. For example, the ALJ noted the significant deterioration reported by Plaintiff in her April 2011 function report, shortly after she was initially denied benefits and was seeking reconsideration of that decision. (Tr. 23). Despite alleging that she was able to do almost nothing and no longer assisted her parents, the records reflected that she continued to drive to help her mother, and was very actively involved with assisting other family members, including her mentally disabled husband, two grandchildren whom she was helping to raise, a disabled nephew, a terminally ill sister and cousin, and others. Plaintiff testified that she has panic attacks "a couple times a week," (Tr. 46) but her mental health records contain few references to any such reports. While Plaintiff claimed that her symptoms have worsened over time, the ALJ reasonably discounted the credibility of her testimony based upon her medical records, daily activities, and other evidence of record. *See* 20 C.F.R. §404.1529(c)(3)(daily activities may be useful to assess nature and severity of symptoms). Thus, to the extent Plaintiff indirectly challenges the assessment of her credibility, the Court finds no error in the ALJ's negative assessment, which was supported by the record as a whole.

### III. Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case be **CLOSED**.

21

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARGARET DEAN,

                                        Case No. 1:14-cv-310
                                        Barrett, J.
            Plaintiff,                   Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.


**NOTICE**

       Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).